## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  **KENNETH CHARLES NIXON** and    :        **Chapter 13**
      **SHELIEAH ONEIDA DEVORE-NIXON,**    :
                                  :
                **Debtor(s)**        :        **Bky. No. 09-11567 ELF**

# M E M O R A N D U M

### I.  INTRODUCTION

Presently before me is the Debtors' Motion to Redress Willful Violation of Automatic Stay ("the Motion").  The Debtors assert that Philadelphia Gas Works ("PGW") willfully violated the automatic stay, 11 U.S.C. §362(a), by misapplying their post-petition payment to their pre-petition account and by terminating their residential gas service.  They seek damages and attorney's fees under §362(k) of the Bankruptcy Code, 11 U.S.C. §362(k).[1]  PGW contests liability and the damages claimed by the Debtors.

An evidentiary hearing was held and concluded on September 22, 2009.  Neither party offered any testimonial evidence (perhaps due to the relatively small amount of money at stake in this dispute).  Instead, the parties agreed that the court could rule on the motion based upon both

---

[1]  In their Motion, the Debtors cite 11 U.S.C. §362(h).  However, it is clear that they intended to cite 11 U.S.C. §362(k).  Former section 362(h) was amended and recodified as §362(k) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), effective October 17, 2005 ("BAPCPA").  Section 362(k) provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

counsel's factual recitations.[2]

     As explained below, I find that PGW willfully violated the automatic stay and that the

Debtors are entitled to relief insofar as PGW applied their post-petition payment to their pre-

petition account.[3]  However, the Debtors did not meet their burden of proof with respect to the

additional damages they claim they suffered as a result of  the termination of their gas service.

Therefore, it is unnecessary to determine whether the termination of service violated the

automatic stay or was "willful" within the meaning of 11 U.S.C. §362(k).  Consequently, I will

deny the Debtors' request for an award of additional damages for the out-of-pocket expenses they

incurred after the termination of their gas service.  Finally, the Debtors will be awarded counsel

fees of $1,000.00.[4]

## II.  FACTS

1.    Kenneth Charles Nixon and Shelieah Oneida Devore-Nixon, the Debtors in this bankruptcy

    case, are individuals who reside at 6114 Newtown Avenue, Philadelphia, PA 19111 ("the

---

[2]    In its Response to the Motion, PGW argued that the Debtors should have asserted their
claim by filing an adversary complaint.  See Fed. R. Bankr. P. 7001.  PGW did not press this asserted
procedural irregularity at the hearing and consented to the resolution of the dispute as a contested matter.

[3]    I note that there is a division of authority on the question whether the standard of proof
under 11 U.S.C. §362(k) is "preponderance of" or "clear and convincing" evidence.  See, e.g.,   In re
Wingard, 382 B.R. 892, 900 (Bankr. W.D. Pa. 2008).  Here, because the facts are undisputed, I need
not reach the issue.

[4]    PGW has not contested the reasonableness of the attorney's fees the Debtors requested.
Based on my independent review, I find the requested fees reasonable.  Therefore, I will not discuss the
issue further in this Memorandum.

Property").

2.    PGW is a collection of real and personal property owned by the City of Philadelphia ("the

City") that provides gas service to City residents.  It is managed by the Philadelphia

Facilities Management Corporation.[5]

3.    At all relevant times, the Debtors have been residential customers of PGW, and PGW

supplied gas service to the Property.

4.    The Debtors use gas to heat their home and for hot water (but not for cooking).

5.    The Debtors filed this chapter 13 bankruptcy case on March 4, 2009.

6.    As of the commencement of the case, the Debtors' PGW account was delinquent in the

approximate amount of $600.00.  (See Debtors' Schedule F, Docket Entry No. 1).[6]

7.    When the case was filed, neither the Debtors nor their counsel immediately notified PGW

of its commencement.

8.    PGW learned of the bankruptcy filing on or about March 23, 2009, when it received Notice

of the §341 Meeting of Creditors.  (See Docket Entry No. 17).

9.    After it received notice of the bankruptcy filing, PGW closed the Debtors' pre-bankruptcy

account ("the Pre-Petition Account") retroactive to March 4, 2009, i.e., the date of the

bankruptcy filing, and opened a new account ("the Post-Petition Account") effective the

---

[5]    Neither party offered evidence at the hearing regarding PGW's legal status.  I have described PGW as it has been described consistently in numerous judicial decisions.  See Brennon v. Philadelphia Gas Works, 605 A.2d 475, 476 (Pa. Commw. Ct. 1992), alloc. denied, 621 A.2d 582 (Pa. 1993); see also Hendrickson v. Philadelphia Gas Works, 672 F. Supp. 823, 825 (E.D. Pa. 1987); Dawes v. Philadelphia Gas Comm'n, 421 F. Supp. 806, 811 n. 1 (E.D. Pa. 1976); Sphere Drake Ins. Co. v. Philadelphia Gas Works, 782 A.2d 510, 511-12 (Pa. 2001); Public Advocate v. Philadelphia Gas Comm'n, 674 A.2d 1056, 1058 (Pa. 1996).

[6]    I do not understand PGW to dispute this.

3

same date.

10. On March 11, 2009, before PGW received notice of the bankruptcy case, the Debtors made a payment of $523.01 through an electronic, on-line payment program ("the March 11th Payment").

11. PGW credited the $523.01 March 11th Payment to the Debtors' Pre-Petition Account.

12. On March 26, 2009, PGW sent the Debtors a bill for the Post-Petition Account in the amount of $353.86 ("the March 26th Bill"). This bill consisted of $119.86 for the Debtors' post-bankruptcy gas service (from March 4, 2009 through March 23, 2009) and $234.00 for a security deposit PGW requested as adequate assurance of future payment.

13. Payment of the March 26th Bill was due by April 21, 2009.

14. The Debtors did not pay the March 26th Bill by April 21, 2009.

15. On April 27, 2009, PGW sent the Debtors a notice advising them that their gas service would be terminated due to nonpayment if  the March 26th Bill were not paid within ten (10) days.

16. Eight (8) days later, on May 5, 2009, the Debtors made another electronic, on-line payment to PGW.  This payment was in the amount of $353.86 ("the May 5th Payment"), the full amount of the March 26th Bill.

17. PGW credited the May 5th Payment to the Pre-Petition Account instead of the Post-Petition Account.

18. At the time PGW credited the May 5th Payment to the Pre-Petition Account, it had already received notice of the Debtors' bankruptcy filing.

19.   PGW credited the May 5th Payment to the Pre-Petition Account due to PGW's "error."[7]

20.   Because it mistakenly believed that the Debtors had not paid the post-bankruptcy

obligations reflected in the March 26th Bill, PGW effected a curb-side shut-off of the

Debtors' gas service on June 12, 2009.[8]

21.   PGW's termination of service manifested itself to the Debtors when they experienced a

lack of hot water in the Property.[9]

22.   The Debtors assumed that the lack of hot water was caused by a defective hot water heater,

rather than termination of their gas service.

23.   On June 15, 2009, the Debtors replaced their existing hot water heater.  They purchased a

new hot water heater and installed it themselves.  The Debtors spent a total of $531.05 for

the hot water heater and some hardware necessary for the installation.

24.   After installing the new hot water heater, for a now-obvious reason (i.e., the lack of gas

service), the Debtors found that they still lacked hot water.

25.   On June 17, 2009, the Debtors called PGW.  As a result of that phone call, PGW

---

[7]      In his factual recitation regarding this issue at the hearing, PGW's counsel could not explain why the Debtors' May 5th payment was credited to the "closed" Pre-Petition Account when there was an "open" Post-Petition Account other than to say it was as an "error" and a "mistake."  He stated that a "person" at PGW "didn't do it right," having been taught to apply payments to the customer's oldest bill.  Obviously, the PGW employee did not take into account that the bankruptcy filing necessitated that this general practice be varied.

[8]      When gas service is shut off at the curb, PGW's employees do not need to enter the subject premises.  Thus, the termination may occur without the knowledge of the occupant of the premises.

[9]      The gas termination occurred in June, when the Debtors would not have been utilizing gas to heat their home.

discovered that it had mistakenly failed to apply the May 5th Payment to the Post-Petition

Account.

26.    On June 19, 2009, PGW restored the Debtors' gas service.

27.    The Debtor's counsel expended four (4.0) hours in prosecuting the Motion and has a

customary hourly rate of $250.00.

### III.   CONCLUSIONS OF LAW

1.   PGW is a utility subject to 11 U.S.C. §366.

2.   PGW willfully violated the automatic stay, 11 U.S.C. §362(a)(6), when it applied the May 5th

Payment to the Debtor's Pre-Petition account and when it shut off the Debtors' gas service on

June 12, 2009.

3.   PGW is liable to the Debtors under 11 U.S.C. §362(k) for actual damages and attorney's

fees.[10]

### IV.   DISCUSSION

### A.   Statutory Provisions

Upon the filing of a bankruptcy case, a utility such as PGW is subject to the automatic

stay provisions of the Bankruptcy Code.  The automatic stay restrains creditors from, <u>inter alia</u>,:

> (6) any act to collect, assess, or recover a claim against the debtor that arose before
> the commencement of the case under this title . . . .

11 U.S.C. §362(a)(6).

---

[10]      11 U.S.C. §362(k) also authorizes the award of punitive damages "in appropriate
circumstances."  The Debtors have not sought punitive damages.

In addition to the general constraints of the automatic stay, the Bankruptcy Code also addresses utilities more specifically in 11 U.S.C. §366.  Section 366, which governs the respective rights of debtors and utilities with respect to the alteration, continuation or termination of utility service, provides, in pertinent part:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
>
> (c)(1)(A) For purposes of this subsection, the term "assurance of payment" means—
>   (i) a cash deposit;
>   (ii) a letter of credit;
>   (iii) a certificate of deposit;
>   (iv) a surety bond;
>   (v) a prepayment of utility consumption; or
>   (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

11 U.S.C. §366(a), (b), (c)(1).

Simply put, §366(a) prohibits a utility from, inter alia, terminating service during the first twenty (20) days of a bankruptcy case based on a pre-petition debt.  See In re Whittaker, 882 F.2d 791, 793-94 (3d Cir. 1989).  After the expiration of that initial twenty (20) day period, §366(b) prohibits the utility from terminating service if the debtor has timely furnished adequate

7

assurance of payment for post-petition service by the means outlined in §366(c)(1)(A).[11]  Id.  If

the debtor fails to provide timely adequate assurance, the utility may terminate service and such

action will not violate 11 U.S.C. §362(a).  See In re Marion Steel Co., 35 B.R. 188, 196-97

(Bankr. N.D. Ohio 1983).  If the debtor timely posts adequate assurance under §366(b), but

thereafter fails to pay bills for post-bankruptcy service, the utility may terminate service in

accordance with applicable state law procedures.  See Begley v. Philadelphia Elec. Co., 760 F.2d

46, 49 (3d Cir. 1985); In re Jones, 369 B.R. at 752; In re Weisel, 400 B.R. 457 (Bankr. W.D. Pa.

2009).

## B.  The Parties' Contentions

The Debtors' position is straightforward.  While the automatic stay was in effect, PGW

applied the Debtors' May 5th Payment of their post-petition bill to their pre-petition debt.  This

was an act to collect a claim that arose before the case was filed and violated §362(a)(6).  As a

direct consequence of this action, PGW treated the Post-Petition Account as delinquent and

terminated the Debtors' gas service.  From the Debtors' perspective, PGW's actions constituted a

unified course of conduct that violated the automatic stay to their detriment.

PGW responds with three (3) arguments.

First, PGW contends that the termination of the Debtor's gas service did not violate the

stay because the termination was not based on an attempt to collect the unpaid pre-petition debt.

---

[11]     The purpose of the provision was well-expressed by one court:  "Congress sought to
strike a balance, in enacting § 366, between the general right of a creditor to refuse to do business with a
debtor post-petition, and the debtor's need for utility service."  In re Jones, 369 B.R. 745, 748 (B.A.P. 1st
Cir. 2007).

Rather, in PGW's view, the termination was based on the Debtors' <u>post-petition</u> obligations –
specifically, PGW's mistaken belief that the Debtors had not paid either: (1) the requested
adequate assurance of future payment;[12] and (2) their first bill for post-bankruptcy gas service.

Second, PGW contends that the application of the Debtors' post-petition payment to the
Pre-Petition Account and subsequent termination of the Debtors' gas service were not "willful"
violations of the automatic stay as required by §362(k) because those acts were caused by
employee "error."

Third, PGW challenges the reasonableness of the Debtors' conduct following the June 12,
2009 termination of service, <u>i.e.</u>, their assumption that their existing hot water heater was
defective and the purchase of a new one. PGW argues that the Debtors' gas service could have
been restored expeditiously and the unnecessary purchase of a new hot water heater avoided had
the Debtors simply called PGW to inquire why they had no hot water in their home. I interpret
PGW's argument to be that, absent what PGW considers to be "unreasonable" conduct on the
Debtors' part, the Debtors would have suffered no out-of-pocket damages after the gas shut-off.
In effect, PGW argues, in the alternative that (1) the Debtors' own conduct was a superseding
cause of their claimed post-termination damages, relieving PGW of any liability for such
damages, or (2) if not a superseding cause, the Debtors' conduct reflects a failure to take
reasonable steps to mitigate damages and avoid unnecessary expenses, and the Debtors should
not be permitted to recover expenses they could have avoided incurring.

---

[12]    The Debtors' obligation to post adequate assurance is a post-bankruptcy obligation that
PGW likely could have imposed even if there were no pre-petition debt. <u>See generally</u> <u>In re Hanratty</u>,
907 F.2d 1418, 1421 (3d Cir. 1990) (treating the adequate assurance requirement as an exception to the
rights afforded debtors under §366(a)).

### C. Violation of the Automatic Stay

The first issue I consider is whether PGW violated the automatic stay.

PGW does not directly address the question whether its misapplication of the May 5th Payment violated the automatic stay.  Rather, PGW focuses exclusively on its act of terminating the Debtors' gas service, arguing that the termination should not be viewed as a violation of the automatic stay because PGW's decision to terminate was based on its mistaken belief that the Debtors had not paid their March 26th post-petition bill.  In other words, PGW argues that it did not terminate the Debtor's service to collect a pre-petition debt (prohibited conduct under §362(a)(6)) because it terminated service based on the presumed non-payment of a post-petition debt, conduct that is not prohibited by §362(a)(6).

I have no difficulty concluding that PGW's act of crediting the Debtors' May 5th post-petition payment on their post-petition bill to the Pre-Petition Account violated §362(a)(6).  See, e.g., In re Levitt, 37 B.R. 908 (Bankr. E.D. Pa. 1984).  The conduct falls within the literal terms of §362(a)(6).  Thus, the Debtors have established that a violation of the automatic stay occurred.

As for the subsequent termination of the Debtors' gas service, for the reasons discussed in Part IV.E, infra, I find it unnecessary to decide whether that act violated §362(a)(6).

### D. "Willfulness" Under 11 U.S.C. §362(k)

The next issue I consider is whether PGW's act of misapplying the Debtors' post-petition payment to their Pre-Petition Account was "willful" within the meaning of 11 U.S.C. §362(k).

The automatic stay plays a central role in the bankruptcy system.  See, e.g., In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,142 F.3d 631, 637 (3d Cir. 1998) (describing the

automatic stay as a "one of the fundamental debtor protections provided by the bankruptcy laws"). Consequently, bankruptcy policy favors enforcement of the stay and affording a remedy to a debtor damaged by a violation of the stay. This policy finds expression in 11 U.S.C. §362(k). However, not every violation of the stay gives rise to a claim under §362(k). To be actionable under §362(k), the conduct violating the stay must be "willful."

Under §362(k), conduct that violates the automatic stay is willful if the creditor knew of the stay[13] and if the creditor's conduct that violated the automatic stay was intentional. In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990) (citing In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)); accord Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 320 n. 8 (3d Cir. 2003); In re Univ. Med. Ctr., 973 F.2d 1065,1087-88 (3d Cir. 1992).[14] Significantly, the Court of Appeals has recognized that "willfulness" under §362(k) does not require that the creditor have a "specific intent" to violate the stay. E.g., In re Krystal Cadillac-Oldsmobile GMC Truck, Inc., 337 F.3d at 320 n.8; In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d at 329; see also In re Johnson, 501 F.3d 1163, 1171-72 (10th Cir. 2007).

Consistent with the principles discussed above, courts have also regularly held that a "good faith" mistake of law or a "legitimate dispute" as to the creditor's right to take the action

---

[13]    Knowledge of the existence of the bankruptcy case is treated as knowledge of the automatic stay for these purposes. See, e.g., In re Knaus, 889 F.2d 773, 775 (8th Cir. 1989); In re Johnston, 321 B.R. 262, 280 (D. Ariz. 2005); In re Ozenne, 337 B.R. 214, 220 (B.A.P. 9th Cir. 2006); In re Welch, 296 B.R. 170, 172 (Bankr. C.D. Ill. 2003); In re Wagner, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987).

[14]    Some courts have suggested that where the creditor received actual notice of the automatic stay, courts should presume that the violation was deliberate. Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 268-69 (1st Cir. 1999); In re Spinner, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008)

that violates the stay generally does not relieve a willful violator of the consequences of his act.

See, e.g., Atl. Bus. & Cmty. Dev. Corp., 901 F.2d at 329; Fed. Home Loan Mortgage Corp. v.

McCormack, 1996 WL 753938, at *4 (D.N.H. Sept. 3, 1996).[15]

This case presents a "mistake" of a different sort – a creditor acting voluntarily and

intentionally and violating the stay due to what may be characterized as a "clerical" or

"ministerial" error.  The PGW employee who processed the Debtors' May 5th Payment should

have applied it to the Post-Petition Account, but instead applied it to the Pre-Petition Account.

As a result of the error, PGW not only applied the Debtors' payment to the wrong account, but

subsequently (and intentionally) cut off the Debtors' gas service.

There is some legal authority to support PGW's position that an "innocent clerical error"

is not willful under 11 U.S.C. §362(k).  See, e.g., In re Hamrick, 175 B.R. 890, 893-894

(W.D.N.C. 1994); In re Peterson, 297 B.R. 467, 471 (Bankr. W.D.N.C. 2003).  These cases

suggest that creditor action in violation of the stay, arising from employee error and remedied

promptly after the error has been brought to the attention of the creditor, is not "willful" and

should not result in §362(k) liability.  However, most courts that have considered the issue have

held that a violation of the automatic stay occurring from intentional creditor action following

human clerical or computer error is nonetheless a "willful" violation remediable under §362(k).

---

[15]    In University Medical Center, our Court of Appeals recognized a limited exception to the
general standard described above for "willfulness" under §362(k) in its prior incarnation as §362(h).
The court held that a violation of the automatic stay may not be "willful" if the creditor's action is based
on persuasive legal authority indicating that his or her actions do not violate the stay and the law on the
issue is sufficiently unsettled.  973 F.2d at 1088.  A number of courts have concluded that the University
Medical Center good faith exception was legislatively overruled by the BAPCPA amendments to
§362(k).  See In re Douglas Young Builder, Inc., 2009 WL 2827959, at *4 (Bankr. E.D. Pa. Sept. 1,
2009); In re Lightfoot, 399 B.R. 141, 149-50 (Bankr. E.D. Pa. 2008); In re McWilliams, 384 B.R. 728,
730 (Bankr. D.N.J. 2008); In re Mu'min, 374 B.R. 149, 167-70 (Bankr. E.D. Pa. 2007).

See In re Price, 42 F.3d 1068, 1071 (7th Cir. 1994); Wingard, 382 B.R. at 902; In re Orman, 2006 WL 4470839, at *3 (Bankr. E.D. Okla. Sept. 18, 2006); In re Kinsey, 349 B.R. 48, 51-52 (Bankr. D. Idaho 2006); In re Saratoga Springs Plastic Surgery, P.C., 2005 WL 357207, at *4-5 (N.D.N.Y. Feb. 11, 2005), aff'd, 172 Fed. Appx. 339 (2d Cir. Mar. 2, 2006); see also In re Lofton, 385 B.R. 133, 138-41 (Bankr. E.D.N.C. 2008) (failure of creditor's employee to note the bankruptcy filing in both hard copy and computer account records); In re Parker, 279 B.R. 596, 603-04 (Bankr. S.D. Ala. 2002) (when one (1) IRS employee has been given notice of the bankruptcy filing, all IRS employees are chargeable with notice); In re Stamps, 2000 WL 1706897, at *5 (Bankr. N.D. Ill. Nov. 14, 2000) (willfulness found based on a clerical error, but influenced by creditor's four (4) day delay before returning wrongfully repossessed automobile); In re Hill, 222 B.R. 119, 123-24 (Bankr. N.D. Ohio 1998) (finding willfulness in case involving clerical error under §524(a)(2)); In re Brown, 1995 WL 776920, at *2 (Bankr. S.D.Ga. Oct. 30,1995) (suggesting that error in coding computer is willful, but finding record inadequate for grant of summary judgment); Matter of Cowart, 128 B.R. 492, 497 (Bankr. S.D. Ga. 1990) (dictum, in light of the court's holding that sovereign immunity barred the damage claim).

I will follow the cases that I have characterized as representing the majority line. These decisions are more consistent with binding appellate precedent in this circuit. The repeated instruction of the Court of Appeals has been that the concept of willfulness in §362(k) goes to the voluntariness and intentional nature of the action taken by the creditor that violates the stay, not to any specific awareness that the stay is being violated (provided that the creditor is on notice of the bankruptcy case). The fact that the creditor's conduct was triggered by human or computer error, causing the creditor to misperceive the status of the bankruptcy debtor's account, tends to

13

establish only that the creditor was unaware that its (debt collection) actions violated the stay. But that is beside the point because there is no "specific intent" requirement embedded in §362(k). By equating the "innocent" clerical error with a lack of willfulness, the "minority" line of cases veers toward the imposition of a specific intent requirement, a requirement that has been unequivocally rejected by the Court of Appeals. See Atl. Bus. & Cmty. Dev. Corp., 901 F.2d at 329.[16]

Here, it is undisputed that PGW was on notice of the bankruptcy case and the automatic stay at the time the Debtors made their May 5th Payment. It is also undisputed that PGW voluntarily applied the Debtors' May 5th Payment of the March 26th Bill for post-petition service and adequate assurance to the Debtors' Pre-Petition Account, albeit due to human error. This voluntary conduct, with knowledge of the stay, was willful within the meaning of 11 U.S.C. §362(k).[17]

As a result, I find that the Debtors' claim for damages under 11 U.S.C. §362(k) for the misapplied May 5th Payment is meritorious and that the Debtors were damaged in the amount of

---

[16]    The discussion in the text is not intended to suggest that §362(k) imposes a system of strict liability. There is a scienter requirement under §362(k). The creditor must have knowledge of the stay and then engage in voluntary (debt collection) activity in violation of the stay. A stay violation is not actionable unless both the knowledge and voluntariness requirements are satisfied. Not every stay violation will satisfy both of those requirements.

[17]    I note that, unlike the Debtors' May 5th Payment, the Debtors' $523.01 March 11th payment was made before PGW had notice of the bankruptcy case and the automatic stay. The Debtors do not appear to be claiming that PGW's application of the $523.01 March 11th Payment to the Pre-Petition Account gives rise to §362(k) liability. Nor have the Debtors argued that PGW willfully violated the automatic stay by failing to correct the misapplication of the March 11th Payment after receiving notice of the earlier bankruptcy filing. See, e.g., Commercial Credit Corp. v. Reed, 154 B.R. 471 (E.D.Tex. 1993); In re Weatherford, 2009 WL 2900265 (Bankr. D.S.C. Apr. 6, 2009); In re Thorne, 2008 WL 2385991 (Bankr. M.D.N.C. June 11, 2008).

$353.86 as a result of PGW's willful stay violation.


## E.

The other defenses PGW raises, some of which have already been briefly discussed above, relate solely to PGW's alleged liability for terminating the Debtors' gas service (rather than the misapplication of the Debtors' May 5th Payment).  PGW argues that it did not violate the automatic stay by terminating the Debtors' gas service, its actions were not willful and that, in any event, it is not liable for the damages the Debtors allege resulted from the termination of service.[18]

I find it unnecessary to resolve these issues.  As explained below, even if I were to reject all of PGW's arguments, the Debtors have not met their burden of sufficiently quantifying the damages they assert that they suffered as a result of the termination of their gas service.

The Debtors contend that, by virtue of PGW's termination of their gas service, they were damaged in an amount equal to their out-of-pocket expenditure for the purchase of a new hot water heater, i.e., $531.05.  PGW argues that reimbursing the Debtors for their entire out-of-pocket expense would more than compensate them for their loss and would provide them with a windfall.  I agree with PGW.

By spending $531.05, the Debtors replaced a used hot water heater with a new hot water heater.  Because the Debtors' outlay of $531.05 provided them with "upgraded" equipment, full

---

[18]        As explained in Part IV.B., supra, PGW argues that; (1) the termination of service did not violate the stay because PGW's intent was to enforce its right to payment of the Debtors' post-petition obligations, not their pre-petition obligations; and (2) the Debtors's purchase of a new hot water heater was unnecessary and unreasonable, making the Debtors more responsible than PGW for that expense.

reimbursement would put the Debtors in a better position than they were before the asserted stay

violation.  Therefore, it would be inappropriate to award the Debtors their entire out-of-pocket

expense.  If the Debtors were damaged, it is because the amount of their expenditure ($531.05)

exceeded the benefit they obtained (the increased value of the new equipment).  To measure the

difference between what the Debtors paid and the benefit obtained, it is necessary to subtract the

fair market value of the "old" appliance from the cost (and fair market value) of the new

appliance.[19]

 As a general principle, actual damages under 11 U.S.C. §362(k) "must be prove[n] with

reasonable certainty, and mere speculation, guess or conjecture will not suffice."  Aiello v.

Providian Fin. Corp., 257 B.R. 245, 249 (N.D. Ill. 2000), aff'd, 239 F.3d 876 (7th Cir. 2001);

accord In re Heghmann, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) ("actual damages should be

awarded only if there is concrete evidence supporting the award of a definite amount"); In re

Sculky, 182 B.R. 706, 708 (Bankr. E.D. Pa. 1995) ("[d]amages may not be awarded based upon

speculation, guess and conjecture").  The burden of proof on the issue is on the Debtors.  See,

e.g., Main, Inc. v. Blatstein, 1999 WL 424296, at *5 (E.D. Pa. June 23, 1999); In re Lord, 270

B.R. 787, 794 (Bankr. M.D. Ga. 1998); see generally In re FRG, Inc., 121 B.R. 451, 458 (Bankr.

---

[19] In cases involving damage to personal property caused by negligence, damages are typically measured by the cost of repair if the injury is remediable, by the depreciation in the value of the property if the injury is permanent or, if the cost of repair exceeds the pre-injury value of the property, by the total value of the property.  See, e.g., Bogar v. Sperry Rand Corp., 504 F.Supp. 872, 876 (E.D. Pa. 1980), aff'd, 671 F.2d 495 (Table) (3d Cir. 1981); In re Marianni, 21 B.R. 228, 231 (Bankr. E.D. Pa. 1982); Pa. Dept. of Gen. Serv. v. U.S. Mineral Prod. Co., 898 A.2d 596, 612-23 (Pa. 2006).  This case is a little different because it involves the purchase of a new item of personal property that is allegedly caused by an improper, intentional act, rather than tortious damage or destruction of an existing item. However, the methodology set out in the text is consistent with the approach used by the courts under the more common fact pattern.

E.D. Pa. 1990).

Here, there is nothing in the record that would permit any finding regarding the comparative values of the "old" and "new" hot water heaters.  I know nothing about them other than the cost of the new heater.  The Debtors produce no evidence concerning the original cost, age or life expectancy of the "old" hot water heater.  I do not know if the two (2) pieces of equipment were equivalent in terms of their storage capacity.  Nor do I know if any of the cost of the "new" equipment included a warranty.  It is therefore, impossible to determine the extent of the Debtors' damages.  Any award of damages would necessarily be based on pure, impermissible speculation. As the Debtors bear the burden of proof on the issue, no damages may be awarded.  Because no damages may be awarded, it is immaterial whether the termination of gas service constituted a willful stay violation.

## V.  CONCLUSION

For the reasons set forth above, the Motion will be granted.  An Order consistent with this Memorandum will be entered.

Date:   **October 26, 2009**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**